James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Liaison Counsel for Lead Plaintiff
Movants William Mayers and Tamara
Mayers*

Robert V. Prongay
Charles H. Linehan
**GLANCY PRONGAY &
MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Fax: (310) 201-9160

*Counsel for Lead Plaintiff Movants
William Mayers and Tamara Mayers*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DYLAN OLSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RED CAT HOLDINGS, INC., JEFFREY THOMPSON, LEAH LUNGER, JOSEPH HERNON, GEORGE MATUS, GEOFFREY HITCHCOCK, and BRENDAN STEWART,<br><br>Defendants. | Case No. 2:25-cv-05427-MEF-JSA<br><br>**THE MAYERS' OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................1

II.   THE MAYERS HAVE THE SECOND-LARGEST FINANCIAL INTEREST BEHIND THE CHENG/HOWARD GROUP............................3

III.  THE CHENG/HOWARD GROUP SHOULD BE DISQUALIFIED AS INADEQUATE, ATYPICAL, AND SUBJECT TO UNIQUE DEFENSES.......................................................................................4

    A.    Cheng Is Atypical, Inadequate And Subject To Unique Defenses Because His Loss Is Entirely Attributable To Options Transactions.....................................................................4

    B.    The Cheng/Howard Group Is Inadequate Because It Is Cobbled Together By Its Counsel...................................................6

IV.   THE MAYERS SHOULD BE APPOINTED AS LEAD PLAINTIFF ..........8

V.    THE MAYER'S CHOICE OF COUNSEL SHOULD BE APPROVED .......9

VI.   CONCLUSION..................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ...................................................................................5, 6

*City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*,
  2025 WL 743986 (S.D.N.Y. Mar. 6, 2025)...............................................................5

*Cook v. Allergan PLC*,
  2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)........................................................4, 5

*Dang v. Amarin Corp. PLC*,
  2022 WL 15524944 (D.N.J. Oct. 27, 2022).............................................................7

*Grodko v. Cent. Eur. Distribution Corp.*,
  2012 WL 6595931 (D.N.J. Dec. 17, 2012) .............................................................6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................... 3, 6, 9

*In re Elan Corp. Sec. Litig.*,
  2009 WL 1321167 (S.D.N.Y. May 11, 2009)..........................................................4

*In re Enzymotec Ltd. Sec. Litig.*,
  2015 WL 918535 (D.N.J. Mar. 3, 2015) ..................................................................6

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
  2007 WL 2683636 (D.N.J. Sept. 7, 2007)................................................................8

*Jaramillo v. Dish Network Corp.*,
  2023 WL 5312062 (D. Colo. Aug. 16, 2023)...........................................................4

*Kinney v. Capstone Turbine Corp.*,
  2016 WL 5341948 (C.D. Cal. Feb. 29, 2016)..........................................................8

*Montesano v. Eros Int'l PLC*,
  2020 WL 1873015 (D.N.J. Apr. 14, 2020)...............................................................3

*Patel v. Reata Pharms., Inc.*,
    549 F. Supp. 3d 559 (E.D. Tex. 2021) .......................................................................5

*Roby v. Ocean Power Techs., Inc.*,
    2015 WL 1334320 (D.N.J. Mar. 17, 2015) .............................................................3

*Stires v. Eco Sci. Sols., Inc.*,
    2018 WL 5784817 (D.N.J. Feb. 14, 2018).............................................................7, 8

*Takata v. Riot Blockchain, Inc.*,
    2018 WL 5801379 (D.N.J. Nov. 6, 2018)................................................................7

*Teroganesian v. Southwest Airlines Co.*,
    2023 WL 4565464 (S.D. Tex. July 15, 2023) .........................................................5

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................1

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ...................................................................... 1, 2, 8

15 U.S.C. § 78u-4(a)(3)(B)(v) .....................................................................................9

iii

Lead plaintiff Movants William Mayers and Tamara Mayers (the "Mayers") respectfully submit this memorandum of law in opposition to the three other motions for appointment as lead plaintiff and approval of lead counsel (Dkt. Nos. 4, 5, 6).

## I.    INTRODUCTION

Four movants (including two movant groups) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Dkt. Nos. 3, 4, 5, 6. The motions were filed by the Mayers (Dkt. No. 3); James Cheng ("Cheng") and Levelt Howard ("Howard," and with Cheng, the "Cheng/Howard Group") (Dkt. No. 6); Greenstone Nevada, LLC ("Greenstone") (Dkt. No. 5); and Catherine A. Green ("Green") (Dkt. No. 4).

With respect to the lead plaintiff determination, the question here is which of these movants is the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff

1

"will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

While the Cheng/Howard Group claims to have the largest loss and therefore the largest financial interest, the group is ineligible for appointment as lead plaintiff because it is inadequate, atypical, and subject to unique defenses. Specifically, Cheng is atypical of the mostly-stockholder class because his loss is exclusively attributable to his options transactions, and he has a gain on his stock transactions. The Cheng/Howard Group tacitly concedes Cheng's typicality issues by grouping him with Howard, who has a relatively minimal stock loss. But adding Howard does not fix Cheng's issues, and actually generates another problem for the group as courts in this District routinely disqualify groups of unrelated investors, cobbled together by counsel, as inadequate to represent the class. For these reasons, the Cheng/Howard Group should be disqualified from consideration for appointment as lead plaintiff.

The Mayers have the next largest financial interest in this action, and as such, the most adequate plaintiff presumption moves to them. Since no other movant has (or can) rebut the presumption, the Mayers should be appointed as lead plaintiff, and their selection of lead counsel should be approved.

2

## II.    THE MAYERS HAVE THE SECOND-LARGEST FINANCIAL INTEREST BEHIND THE CHENG/HOWARD GROUP

Although the PSLRA does not mandate a particular method for determining which movant has the largest financial interest, "[t]he Third Circuit has concluded that 'largest financial interest' means the largest loss." *Roby v. Ocean Power Techs., Inc.*, 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001)); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *3 (D.N.J. Apr. 14, 2020) (same).

Here, The Mayers have the second largest financial interest as measured by the movants' losses:[1]

| Movant | Loss |
|---|---|
| *James Cheng* | *$262,176* |
| *Levelt Howard* | *$32,249* |
| **Cheng/Howard Total** | **$294,425** |
| *William Mayers* | *$137,623* |
| *Tamara Mayers* | *$91,292* |
| **Mayers Total** | **$228,915** |
| **Greenstone Nevada, LLC** | **$115,904** |
| **Catherine A. Green** | **$31,742** |

As such, the Mayers have the second largest financial interest in the relief sought by the class behind only the Cheng/Howard Group.

---

[1] The figures in this chart may differ from the figures in the movants' initial motions because the figures here are normalized using the same 90-day average price to value losses on retained shares as was used in the Mayers' financial interest analysis.

3

**III.    THE CHENG/HOWARD GROUP SHOULD BE DISQUALIFIED AS INADEQUATE, ATYPICAL, AND SUBJECT TO UNIQUE DEFENSES**

The Cheng/Howard Group is ineligible for appointment as lead plaintiff because it is inadequate, atypical, and subject to unique defenses for two reasons. First, Cheng's loss is entirely due to options. Second, the Cheng/Howard Group is an improper group of unrelated investors cobbled together by counsel for the purpose of securing appointment as lead plaintiff and lead counsel.

**A.    Cheng Is Atypical, Inadequate And Subject To Unique Defenses Because His Loss Is Entirely Attributable To Options Transactions**

Cheng (and his group) should be disqualified because his losses are ***entirely*** attributable to his options trading. *See* Dkt. No. 6-3 (Cheng's loss calculation, showing an options loss and stock gain for Cheng). "The appointment of [Cheng] as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict.'" *See Cook v. Allergan PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (quoting *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)). Courts nationwide routinely disqualify movants whose losses are primarily attributable to options trading. *See, e.g.*, *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *5 (D. Colo. Aug. 16, 2023) ("[A]ppointing movants whose losses overwhelmingly relate to options trades . . . would introduce factual issues irrelevant

4

to the class as a whole."); *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("[T]he fact that Massar's losses during the Class Period were based solely on option contracts renders Massar atypical of the putative class."); *City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, 2025 WL 743986, at *3 (S.D.N.Y. Mar. 6, 2025) (disqualifying movants whose "their losses arose primarily from options-related transactions and short sales"); *Teroganesian v. Southwest Airlines Co.*, 2023 WL 4565464, at *5 (S.D. Tex. July 15, 2023) (finding "movant who invested primarily or exclusively in options" was atypical). The same result is warranted with respect to Cheng and the Cheng/Howard Group.

Moreover, the fact that ***all*** of Cheng's losses are attributable to options and that he has a stock ***gain*** compounds his issues. *See Reata Pharms.*, 549 F. Supp. 3d at 567 (movant's "gain in common stocks makes [him] . . . materially different from the putative class consisting largely of common stockholders"). *Allergan*, 2019 WL 1510894, at *2 (disqualifying a movant where "approximately 60% of his claimed losses came as a result of options trading"). Accordingly, Cheng and his group should be disqualified as they are inadequate, atypical, and subject to unique defenses.

Regardless of whether Defendants' attacks on Cheng's option trading losses will be successful, they will undoubtedly become a distraction at later stages of the litigation, which is sufficient to disqualify Cheng at this stage. *See Beck v. Maximus,*

5

*Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (part of "the challenge presented by a defense unique to a class representative" is that "the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class"); *In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 918535, at *2 (D.N.J. Mar. 3, 2015) (disqualifying a lead plaintiff movant, citing *Maximus*); *Grodko v. Cent. Eur. Distribution Corp.*, 2012 WL 6595931, at *8 (D.N.J. Dec. 17, 2012) (denying lead plaintiff motion because "the Court cannot prejudice the class with the time and expense that will probably ensue from litigating the unique loss causation defense"). Accordingly, Cheng and his group should be disqualified.

### B. The Cheng/Howard Group Is Inadequate Because It Is Cobbled Together By Its Counsel

As an initial matter, the fact that counsel for the Cheng/Howard Group added Howard (an investor with stock losses) to the group should be read as a tacit admission that they realize Cheng is atypical and subject to unique defenses based on his options trading. The addition of Howard appears to be an effort to remedy Cheng's issues. However, the addition of Howard only generates additional adequacy issues for the group.

The Cheng/Howard Group should be disqualified because it is composed of unrelated investors, cobbled together by counsel for purposes of achieving lead plaintiff (and lead counsel) status. *See Cendant*, 264 F.3d at 267 ("If . . . a court were to determine that the movant 'group' with the largest losses had been created by the

6

efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner."). Courts in the District routinely rely on *Cendant* to disqualify cobbled-together groups. *See, e.g.*, *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at *6 (D.N.J. Oct. 27, 2022) ("[T]he makeup of the Amarin Group and the circumstances of its formation weigh against its appointment as lead plaintiff."); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (disqualifying group that "made of up of three seemingly unconnected strangers from across the county" and provided no information about how "apparent strangers from different states found each other") (citation omitted); *Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (similar).

The Cheng/Howard Group is cobbled together by its counsel. The joint declaration submitted by Cheng and Howard does not affirm that Cheng and Howard knew each other before this litigation. *See* Dkt. No. 6-3 at 25-29 ("Joint Decl."). Cheng and Howard do not even affirm that they have ever interfaced with each other. Instead, they vaguely state "[w]e have discussed this case with an attorney from Pomerantz," without affirming that it was at the same time or even with the same attorney. *Id.* ¶ 4. Cheng resides in New Jersey while Howard resides in Florida. *Id.* ¶¶ 2, 3. Moreover, the fact that Howard alone admits he is "also represented by the

7

Portnoy Law Firm" (*see id.* ¶ 3) further evidences that the group formation was likely driven by coordination between the firms rather than Cheng and Howard personally. As such, "[i]t appears . . . that the [Cheng/Howard Group] is precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" *Eco Sci. Sols.*, 2018 WL 5784817, at *5 (disqualifying group where "the Joint Declaration does not provide . . . any information regarding how these five apparent strangers from different states found each other"). As such, the Cheng/Howard Group is inadequate and should be disqualified.

## IV.    THE MAYERS SHOULD BE APPOINTED AS LEAD PLAINTIFF

Since the Cheng/Howard Group should be disqualified, the Mayers have the largest loss and the largest financial interest of the remaining *bona fide* movants. Since they also timely moved and made the required showing of their typicality and adequacy, they are the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Moreover, unlike the Cheng/Howard Group, the Mayers are an adequate and cohesive group since they are a married couple. *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *2 (D.N.J. Sept. 7, 2007) (appointing a "small related group" consisting of a "married couple" and their "investment vehicles"); *Kinney v. Capstone Turbine Corp.*, 2016 WL 5341948, at *4 (C.D. Cal. Feb. 29, 2016) ("In contrast to the artificial cohesion of the Capstone

8

Investor Group, the Kays represent the quintessential cohesive unit fit to qualify together as an adequate lead plaintiff—they are a married couple.").

Since no movant has (or can) prove that the Mayers are inadequate or atypical, they should be appointed as lead plaintiff.

## V.    THE MAYER'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Here, the Mayers have selected Glancy Prongay & Murray LLP as lead counsel and Carella, Byrne, Cecchi, Brody & Agnello, P.C. as liaison counsel. The firms have the expertise, resources, and experience needed to conduct this litigation efficiently and effectively. *See* Dkt. No. 3-7; Dkt. No. 3-8. By approving the Mayers' selection of counsel, the Court may be assured that the class will receive the highest caliber of legal representation. Accordingly, the Mayers' selection of counsel for the class should be approved.

## VI.    CONCLUSION

For all these reasons, the Mayers request that the Court grant their motion and enter an Order: (1) appointing the Mayers as lead plaintiff; (2) approving the Mayers' selection of Glancy Prongay & Murray LLP as lead counsel and Carella, Byrne, Cecchi, Brody & Agnello, P.C. as liaison counsel for the class; (3) denying the competing motions; and (4) granting such other relief as the Court may deem just

9

and proper.

DATED: August 4, 2025

Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By: _s/ Kevin G. Cooper_
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com
     decklund@carellabyrne.com
     kcooper@carellabyrne.com

*Liaison Counsel for Lead Plaintiff Movants William Mayers and Tamara Mayers*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movants William Mayers and Tamara Mayers*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

10

## CERTIFICATE OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 4, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the District of New Jersey, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 4, 2025, at Roseland, New Jersey.

/s/ Kevin G. Cooper
Kevin G. Cooper

11