**KAHN SWICK & FOTI, LLC**

Kim E. Miller (*PHV to be submitted*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730

*Counsel for Lead Plaintiff Movant*
*Greenstone Nevada, LLC and*
*Proposed Lead Counsel for the Class*

**DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP**

Vincent M. Giblin
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Telephone: (201) 347-2136

*Local Counsel for Lead Plaintiff*
*Movant Greenstone Nevada, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DYLAN OLSEN, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RED CAT HOLDINGS, INC., JEFFREY THOMPSON, LEAH LUNGER, JOSEPH HERNON, GEORGE MATUS, GEOFFREY HITCHCOCK, and BRENDAN STEWART,<br><br>Defendants. | Civ. A. No. 2:25-CV-05427-MEF-JSA<br><br>**CLASS ACTION**<br><br>**GREENSTONE NEVADA, LLC'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLANTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>**MOTION DATE: August 18, 2025** |

# TABLE OF CONTENTS

**Page:**

I.  INTRODUCTION ..............................................................................1

II. ARGUMENT ....................................................................................6

    A.  Legal Standards .........................................................................6

    B.  The Lawyer-Driven Cheng/Howard Group is Not the
Presumptive Lead Plaintiff Because It Materially Overstated
its Financial Interest by Including Non-Dura Losses.........................10

    C.  The Cheng/Howard Group Does Not "Otherwise Satisfy"
the Requirements of Rule 23 and Is Subject to
Unique Defenses.......................................................................17

        1.  Cheng Day Traded in Red Cat Common Stock
During the Class Period ...........................................................18

        2.  Cheng Predominantly Traded in Red Cat Options,
Subjecting Him to Unique Reliance Defenses.........................19

        3.  Cheng and Howard Had No Pre-Litigation Relationship
and Appear to Have Been Brought Together by Counsel
for the Sole Purpose of Aggregating Losses............................20

    D.  The Mayers Do Not "Otherwise Satisfy" the Requirements
of Rule 23 and Are Subject to Unique Defenses...............................21

        1.  The Mayers' Overstated Losses Go to the Heart of their
Adequacy ...............................................................................22

        2.  The Mayers Would Saddle the Putative Class with
Unnecessarily Duplicative Counsel .........................................24

    E.  Greenstone Is the "Most Adequate Plaintiff" That
"Otherwise Satisfies" the Requirements of Rule 23 ..........................26

    F.  The Court Should Approve Greenstone's Choice
of Lead Counsel.......................................................................27

III. CONCLUSION................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Africa v. Jianpu Tech., Inc.*,
   No. 21-cv-1419, 2021 U.S. Dist. LEXIS 95246 (S.D.N.Y. May 19, 2021) . 15, 16

*Andrada v. Atherogenics, Inc.*,
   No. 05-cv-0061, 2005 U.S. Dist. LEXIS 6777 (S.D.N.Y. Apr. 18, 2005)...........19

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ........................................................................ 9, 10

*Bousso v. Spire Glob., Inc.*,
   No. 24-cv-01458, 2024 U.S. Dist. LEXIS 213229 (E.D. Va. Nov. 21, 2024).....24

*Christian v. BT Grp. PLC*,
   No. 17-cv-00497, 2017 U.S. Dist. LEXIS 138063 (D.N.J. Aug. 28, 2017) ........14

*City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*,
   No. 24-CV-9908, 2025 U.S. Dist. LEXIS 41430 (S.D.N.Y. Mar. 6, 2025) ........19

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*,
   269 F.R.D. 291 (S.D.N.Y. 2010).........................................................................9

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
   No. 20-cv-9132, 2021 U.S. Dist. LEXIS 21607 (S.D.N.Y. Feb. 4, 2021)...........15

*Cook v. Allergan PLC*,
   No. 18-cv-12089, 2019 U.S. Dist. LEXIS 51962 (S.D.N.Y. Mar. 21, 2019)......19

*Dang v. Amarin Corp. PLC*,
   No. 21-cv-19212, 2022 U.S. Dist. LEXIS 196034 (D.N.J. Oct. 27, 2022) .........20

*Dura Pharmaceuticals v. Broudo*,
   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ................................2, 8

*Durigon v. Toronto-Dominion Bank*,
   No. 17-cv-1665, 2017 U.S. Dist. LEXIS 205404 (D.N.J. Dec. 13, 2017)...........26

ii

*Feldman v. Scynexis, Inc.*,
No. 23-cv-22082, 2024 U.S. Dist. LEXIS 124409 (D.N.J. July 15, 2024)............8

*Galmi v. Teva Pharms. Indus.*,
302 F. Supp. 3d 485 (D. Conn. 2017) ...............................................................19

*Garcia v. Intelligroup, Inc.*,
No. 04-CV-4980, 2005 U.S. Dist. LEXIS 50230 (D.N.J. May 19, 2005) ...........27

*Goldberger v. PXRE Grp., Ltd.*,
No. 06-CV-3410, 2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ......21

*Grodko v. Cent. European Distribution Corp.*,
No. 12-cv-5530, 2012 U.S. Dist. LEXIS 178478 (D.N.J. Dec. 17, 2012).... 10, 14

*Haynie v. Cornell Univ.*,
No. 20-CV-467, 2020 U.S. Dist. LEXIS 188766 (N.D.N.Y. Oct. 13, 2020) ......25

*Hoxworth v. Blinder, Robinson & Co., Inc.*,
980 F.2d 912 (3d Cir. 1992) ..............................................................................27

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................................7, 9

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ................................................................21

*In re LightInTheBox Holding Co., Sec. Litig.*,
No. 13-cv-6016 (PKC), 2013 U.S. Dist. LEXIS 165842 (S.D.N.Y. Nov. 21,
2013) ............................................................................................................ 8, 11

*In re Netflix, Inc., Sec. Litig.*,
No. 12-cv-0225, 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26, 2012) ........10

*In re Nice Sys. Sec. Litig.*,
188 F.R.D. 206 (D.N.J. 1999) ...........................................................................26

*In re Opnext, Inc. Sec. Litig.*,
No. 08-cv-0920, 2008 U.S. Dist. LEXIS 60678 (D.N.J. Aug. 6, 2008) ..............18

iii

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) ................................................................................25

*In re Polarityte, Inc. Sec. Litig.*,
   No. 18-cv-0510, 2019 U.S. Dist. LEXIS 8620 (D. Utah Jan. 16, 2019)..............26

*Jiang v. Chirico*,
   No. 23-cv-1258, 2024 U.S. Dist. LEXIS 38112 (S.D.N.Y. Mar. 5, 2024) ... 16, 17

*Karp v. Diebold Nixdorf, Inc.*,
   No. 19-cv-6180 (LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019)
   ................................................................................................................................24

*Lax v. First Merchants Acceptance Corp.*,
   No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432 (N.D. Ill. Aug. 6, 1997) ...............7

*Lewis v. Cytodyn, Inc.*,
   No. 21-cv-5190, 2021 U.S. Dist. LEXIS 158054 (W.D. Wash. Aug. 19, 2021)..8,
   9

*Patel v. Zoompass Holdings Inc.*,
   No. 17-CV-3831, 2017 U.S. Dist. LEXIS153765 (D.N.J. Sept. 20, 2017) ...........7

*Pio v. GM Co.*,
   No. 14-cv-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ..22

*Plaut v. The Goldman Sachs Grp., Inc.*,
   No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019).....16

*Reid v. Hemispherx Biopharma, Inc.*,
   No. 09-cv-5262, 2010 U.S. Dist. LEXIS 161564 (E.D. Pa. Feb. 9, 2010) ........8, 9

*Reitan v. China Mobile Games & Entm't Grp., Ltd*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014)....................................................................24

*Roofers' Pension Fund v. Papa*,
   No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264 (D.N.J. Apr. 27, 2017) .............10

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)......................................................... 11, 16

*Siegel v. The Bos. Beer Co.*,
 No. 21-CV-7693, 2021 U.S. Dist. LEXIS 239143 (S.D.N.Y. Dec. 14, 2021) ....24

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*,
 No. 11-cv-6247, 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug. 22, 2012) ..........10

*Weltz v. Lee*,
 199 F.R.D. 129 (S.D.N.Y. 2001)...................................................................27

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*,
 No. 16-CV-0240, 2016 U.S. Dist. LEXIS 164682 (S.D.N.Y. Nov. 29, 2016)....22

**Statutes**
15 U.S.C. § 78u-4.............................................................................. 1, 2, 7, 23, 28

Lead Plaintiff Movant Greenstone Nevada, LLC ("Greenstone" or "Movant") respectfully submits this Omnibus Memorandum of Law in Opposition to the Competing Motions of James Cheng and Levelt Howard (ECF No. 6), William and Tamara Mayers (ECF No. 3), and Catherine Green (ECF No. 4) for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel in the above-captioned Action.

## I.    INTRODUCTION

On July 22, 2025, Greenstone and three other movants timely filed motions seeking appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The PSLRA provides that the Court shall appoint as Lead Plaintiff the movant who: (1) files the complaint or a timely motion for appointment as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(i), (iii). There is a "rebuttable presumption" that the movant with the greatest financial interest that otherwise satisfies the requirements of Rule 23 is the "most adequate plaintiff" and should be appointed lead plaintiff. *Id.* This presumption can be rebutted, however, by a showing that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §

1

78u-4(a)(3)(B)(iii)(II).

While both movants James Cheng and Levelt Howard (the "Cheng/Howard Group") and William and Tamara Mayers (the "Mayers") *claim* a greater financial interest than Greenstone, their motions for appointment as lead plaintiff should be denied because they both overstate their losses, do not satisfy the typicality or adequacy requirements of Rule 23, and are subject to unique defenses which render them incapable of adequately protecting the putative Class. As set forth herein, Greenstone should be appointed Lead Plaintiff, and its selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel should be approved, because it has the largest financial interest among those movants who otherwise satisfy the requirements of Rule 23, and is not subject to any unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

First, while the Cheng/Howard Group asserts it "incurred losses of approximately $(294,016) in connection with its Class Period transactions in Red Cat securities," ECF No. 6-2 at 10, that figure erroneously includes Cheng's losses on transactions in Red Cat options he sold or which expired prior to the pertinent, alleged corrective disclosures, in contravention of *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342-43, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). After excluding these unrecoverable, non-*Dura* losses, Cheng actual *profited* from his Class Period

2

transactions in Red Cat securities to the tune of **$146,599**.[1] After offsetting Cheng's gains with Howard's loss on Red Cat common stock, the Cheng/Howard Group *actually enjoyed a Class Period gain of approximately $114,756.89. See id.; see also infra* at § II.B.

Even if the Cheng/Howard Group's material overstatement of its financial interest in this litigation were not itself disqualifying, it would nevertheless fail to satisfy the PSLRA's requirements because it is subject to disqualifying unique defenses. First, Cheng's Class Period transactions in Red Cat common stock evidence a pattern of day-trading, which subjects the Cheng/Howard Group to unique reliance defenses. Second, the fact that Cheng's Class Period transactions in options greatly outnumbers his transactions in common stock subjects him to an additional unique defense. Finally, the Joint Declaration Cheng and Howard submitted with their Motion (ECF No. 6-3) reveals that the Cheng/Howard Group is lawyer-driven and was created by counsel for the sole purpose of aggregating losses, a practice disfavored by courts within this Circuit.

Turning to the Mayers, their claimed loss of $(228,915.09), while greater than the Cheng/Howard Group's gain, is also overstated. The Loss Chart submitted with

---

[1] Attached as Exhibit A to the Supplemental Declaration of Vincent M. Giblin in Opposition to the Competing Motions for Appointment (submitted simultaneously herewith), is a conformed loss chart that matches the Cheng/Howard Group's Class Period transactions on a LIFO-basis and excludes all non-*Dura* losses. *See* Suppl. Giblin Dec. at Ex. A ("Cheng/Howard Conformed Loss Chart").

the Mayers' Motion (ECF No. 3-6) demonstrates that the Mayers miscalculated the 90-day "lookback price" as $7.1445/share, as opposed to $7.22/share, because they concluded that said price "is the average closing price between January 17, 2025 and April 16, 2025." *Id.* But this is incorrect. The PSLRA's damages limitation, codified at 15 U.S.C. § 78u-4(e)(1), provides that:

> [T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

*Id.* Here, the final "date on which the information correcting the misstatement or omission that is the basis for the action" was alleged to have been "disseminated to the market on January 16, 2025, *not* January 17, 2025. *See* Complaint (ECF No. 1) at ¶ 67 ("On January 16, 2025, during intraday trading hours, Kerrisdale published a report alleging, inter alia, that Red Cat had overstated the value of the SRR Contract and lacks the production capacity to deliver on its promises."). When appropriately calculated with a January 16, 2025, start date, therefore, the 90-day lookback price is $7.22/share, *not* $7.1445/share. Utilizing the correct lookback price reduces the Mayers' losses by some $2,987.97, from $(228,915.09), to $(225,927.12). *See* Suppl. Giblin Decl. at Ex. B ("Mayers Conformed Loss Chart"). While the size of Mayers' overstatement does not approach that of the Cheng/Howard Group, the nature of their overstatement *does* impute their adequacy

4

to serve as Lead Plaintiff in this Action under Rule 23. Courts have routinely held that fundamental errors such as this demonstrate a lack of attention to detail that undermines a finding of adequacy. Finally, the Mayers would saddle the putative Class with unnecessary, duplicative counsel, as they have identified three separate law firms that would be involved in the prosecution of this Action.

Having rebutted any arguable presumption in favor of the Cheng/Howard Group and the Mayers, the movant with the greatest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 is Greenstone. Greenstone incurred losses of $(97,421) in connection with its Class Period transactions in Red Cat common stock. Even if Greenstone had not rebutted any presumption in favor of the competing movants, Greenstone carries three of the four *Lax* factors, having purchased 160,850 shares of Red Cat common stock during the Class Period, expended $1,861,714 on these purchases, and retained 60,000 shares of Red Cat common stock through the end of the Class Period. *See* ECF No. 5-2 at 10. As the chart below demonstrates, these figures exceed those of the competing movants.

| Movant: | LIFO/*Dura* (Loss)/Gain: | Shares Purchased: | Stock Expenditures: | Shares Retained: |
|---|---|---|---|---|
| Mayers | $(225,927.12) | 37,878 | $499,535.07 | 37,878 |
| Greenstone | $(97,421.00) | 160,850 | $1,861,714.00 | 60,000 |
| Catherine Green[2] | $8,559.08 | 48,067 | $594,110.70 | 0 |
| Cheng/Howard Group | $114,756.89 | 17,580 | $168,481.00 | 6,115 |

Thus, Greenstone *does* possess the greatest financial interest among those movants who otherwise satisfy the requirements of Rule 23 – as unlike the Cheng/Howard Group and the Mayers (for whom any presumption in their favor Greenstone has rebutted) – Greenstone is not subject to unique defenses as to its adequacy or typicality. For all the reasons set forth herein, therefore, Greenstone should be appointed Lead Plaintiff and its selection of Lead Counsel should be approved.

## II.   ARGUMENT

### A.   Legal Standards

As stated above, under the PSLRA, the Court shall appoint as Lead Plaintiff the movant who: (1) files the complaint or a timely motion for appointment as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i),

---

[2] Much like the Cheng/Howard Group, movant Catherine Green also materially overstated her financial interest in this litigation as $(31,742.39) by including losses on "in-and-out" purchases in contravention of *Dura*. After eliminating those unrecoverable losses, Catherine Green actually *gained* some $8,599.08 on her Class Period transactions in Red Cat common stock. *See* Suppl. Giblin Decl. at Ex. C ("Green Conformed Loss Chart").

(iii). There is a "rebuttable presumption" that the movant with the greatest financial interest that otherwise satisfies the requirements of Rule 23 is the "most adequate plaintiff" and should be appointed lead plaintiff. *Id.* This presumption can be rebutted, however, by a showing that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

While the PSLRA provides no formula to assess a movant's financial interest, courts within the Third Circuit frequently use the so-called "*Lax* factors," being: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 12432, at *18 (N.D. Ill. Aug. 6, 1997); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Of the *Lax* factors, courts within the Third Circuit generally emphasize approximate loss in assessing a movant's financial interest. *See, e.g., Patel v. Zoompass Holdings Inc.*, No. 17-CV-3831, 2017 U.S. Dist. LEXIS153765, at *3 (D.N.J. Sept. 20, 2017).

When assessing approximate losses, however, courts must consider whether those losses are recoverable under *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336,

7

342-43, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005). In *Dura*, the Supreme Court held that losses incurred before the revelation of alleged corrective disclosures "are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements." *In re LightInTheBox Holding Co., Sec. Litig.*, 2013 U.S. Dist. LEXIS 165842, at *10 (S.D.N.Y. Nov. 21, 2013); *see also Reid v. Hemispherx Biopharma, Inc.*, No. 09-cv-5262, 2010 U.S. Dist. LEXIS 161564, at *11 (E.D. Pa. Feb. 9, 2010) ("Plaintiffs like Mr. DeSilva who sustain "in and out" losses — losses sustained by shareholders who both purchased and sold their shares before any corrective disclosure that alerts the market to potential fraud — are ineligible to receive damages."). In addition to excluding non-*Dura* losses, "courts overwhelmingly prefer LIFO over FIFO in calculating shareholder losses." *Feldman v. Scynexis, Inc.*, No. 23-cv-22082, 2024 U.S. Dist. LEXIS 124409, at *4 (D.N.J. July 15, 2024) (collecting citations). "LIFO" stands for "last in, first out," while "FIFO" stands for "first in, first out." "LIFO calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. FIFO assumes that the first stocks to be sold are the stocks that were acquired first, even if the stocks were acquired outside the class period." *Id.* at *3 (quoting *Lewis v. Cytodyn, Inc.*, No. 21-cv-5190, 2021 U.S. Dist. LEXIS 158054, at *10 (W.D. Wash. Aug. 19, 2021)). "LIFO is the most accurate measure of actual losses suffered by stockholders in that it takes into account any gains accrued from sales during the

8

class period….” *Id.* at \*4 (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp.*, 269 F.R.D. 291, 296 (S.D.N.Y. 2010)).

In order to determine if the movant with the greatest financial interest "otherwise satisfies" the requirements of Rule 23, and should thus be afforded the rebuttable presumption, courts within this Circuit have held that, at this stage of the litigation, a preliminary showing of both the "adequacy" and "typicality" requirements of Rule 23 is necessary. *See In re Cendant Corp. Litig.*, 264 F.3d at 263. "To comport with Rule 23, a lead plaintiff must (1) meet the typicality requirement by suffering the same injuries as the absent class members; (2) meet the adequacy requirement by having the ability and the incentive to represent the claims of the class vigorously and without any conflict of interest; and (3) be represented by competent counsel with a reasonable fee agreement." *Reid v. Hemispherx Biopharma, Inc.*, 2010 U.S. Dist. LEXIS 161564, at \*12 (citations omitted).

Finally, the Third Circuit has held a proposed class representative "is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation." *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006). Importantly, a challenging plaintiff "does not have to prove the defense, but he must provide enough evidence to show that it is not speculative or meritless." *Roofers' Pension Fund v. Papa*, No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264, at \*10-11 (D.N.J. Apr. 27, 2017) (citing *Beck*, 457 F.3d at 300, 301). The

purpose of this inquiry is "to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. 11-cv-6247, 2012 U.S. Dist. LEXIS 118693, at *27 (D.N.J. Aug. 22, 2012) (quoting *In re Netflix, Inc., Sec. Litig.*, No. 12-cv-0225, 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 26, 2012)). "If the presumptive lead plaintiff is subject to unique defenses that are likely to become a significant focus at litigation, then the presumption is rebutted and the Court must identify another lead plaintiff by, once again, beginning with the remaining applicant with the greatest financial losses." *Grodko v. Cent. European Distribution Corp.*, No. 12-cv-5530, 2012 U.S. Dist. LEXIS 178478, at *10 (D.N.J. Dec. 17, 2012).

### B.    The Lawyer-Driven Cheng/Howard Group is Not the Presumptive Lead Plaintiff Because It Materially Overstated its Financial Interest by Including Non-*Dura* Losses

While the Cheng/Howard Group asserts it "incurred losses of approximately $(294,016) in connection with its Class Period transactions in Red Cat securities," ECF No. 6-2 at 10, that figure erroneously includes Cheng's non-*Dura* losses on transactions in Red Cat options *he sold or which expired prior to the pertinent, alleged corrective disclosure*. As stated above, these losses are not recoverable under *Dura* and cannot be included in the Cheng/Howard Group's losses in order to assess financial interest. Because *Dura* held losses incurred before the revelation of alleged

corrective disclosures "are not recoverable in a securities fraud action because the losses are not proximately caused by the defendant's misstatements," *In re LightInTheBox*, 2013 U.S. Dist. LEXIS 165842, at *10, "when evaluating a plaintiffs financial interest for purposes of selecting a lead plaintiff, courts…do not take into account losses from shares sold prior to corrective disclosures." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases).

Here, the Complaint alleges three discrete corrective disclosures. The first partial corrective disclosure is alleged to have been disseminated to the market on July 28, 2023. ¶¶ 52-53. On July 27, 2023, "during after-market hours," Red Cat filed its 2023 10-K revealed that construction of its Salt Lake City Facility was not fully completed, its production capacity would only be approximately 100 drones per month, and would only be able to reach 1,000 drones per month in 2-3 years "provided that additional capital investments are made and manufacturing efficiencies realized." ¶ 52 (emphasis removed). Following these and other revelations in Red Cat's FY23 Earnings Conference, the Complaint alleges "the Company's stock price fell $0.10 per share, or 8.93%, to close at $1.02 per share on July 28, 2023." ¶ 53. The second partial corrective disclosure is alleged to have been disseminated to the market on September 24, 2024. ¶¶60-62. On September 23, 2024, "during after-market hours," Red Cat held its 1Q25 Earnings Conference during which Defendant Thompson disclosed that the Salt Lake Facility was not "in

11

full mass production mode," but was instead "retooling and preparing for high volume production." ¶61. Following these and other revelations "the Company's stock price fell $0.80 per share, or 25.32%, over the following two trading sessions, to close at $2.36 per share on September 25, 2024." ¶ 62. Lastly, the final corrective disclosure is alleged to have been disseminated to the market on January 16, 2025. ¶¶ 13. 67-71. On January 16, 2025, "during intraday trading hours," Kerrisdale Capital ("Kerrisdale") published a report (the "Kerrisdale Report") alleging, *inter alia*, "that Defendants had overstated the value of the SRR Contract" and "had been misleading investors about the Salt Lake City Facility's production capacity for years." ¶¶ 13, 67. "Following the publication of the Kerrisdale Report, Red Cat's stock price fell $2.35 per share, or 21.54%, over the following two trading sessions, to close at $8.56 per share on January 17, 2025." ¶ 71.

Under *Dura*, therefore, any putative Class member who purchased Red Cat securities from March 18, 2022 (the first day of the Class Period) through July 27, 2023 (the last trading day immediately preceding dissemination of the first partial corrective disclosure to the market) and sold all of those securities *before* July 28, 2023, does not have any recoverable loss under *Dura*. Similarly, any putative Class member who purchased Red Cat securities from July 28, 2023 through September 23, 2024 (the last trading day immediately preceding dissemination of the second partial corrective disclosure to the market) and sold all of those securities *before*

12

September 24, 2024, does not have any recoverable loss under *Dura*. Finally, any putative Class member who purchased Red Cat securities from September 24, 2024 through January 15, 2025 (the last trading day immediately preceding dissemination of the final corrective disclosure to the market) and sold all of those securities *before* January 16, 2025, does not have any recoverable loss under *Dura*.

That period following the second partial corrective disclosure and preceding the final corrective disclosure is particularly relevant to Cheng's Class Period transactions in Red Cat securities. As detailed in the Cheng/Howard Conformed Loss Chart, on 16 separate occasions Cheng claimed losses for his purchases of Red Cat options he purchased *after* the September 24, 2024, partial corrective disclosure, but which he either sold or which expired *prior* to the January 16, 2025, final corrective disclosure. *See* Suppl. Giblin Decl. at Ex. A. These are classic "in-and-out" transactions that are not recoverable under *Dura*. Indeed, Greenstone itself excluded from its loss calculation two such transactions resulting in $(13,749.50) in losses. *See* Greenstone Loss Chart (ECF No. 5-5). Collectively, those non-*Dura* losses totaled some $(408,770).[3] After removing those non-*Dura* losses from the Cheng/Howard Group's calculations, the Cheng/Howard Conformed Loss Chart reveals the Cheng/Howard Group enjoyed a ***$114,756.89 gain*** on its Class Period

---

[3] Cheng also erroneously claimed a $(7.00) loss on a single non-*Dura* sale of common stock. *See* Suppl. Giblin Decl. at Ex. A

transactions in Red Cat securities.

A court within this District considered a set of facts substantively similar to those presented here in *Grodko v. Cent. European Distribution Corp.*, No. 12-cv-5530, 2012 U.S. Dist. LEXIS 178478 (D.N.J. Dec. 17, 2012). In *Grodko*, the court considered competing applications for appointment as lead plaintiff in a consolidated securities fraud class action with a class period encompassing "shareholders who purchased any CEDC securities…between March 1, 2010 and June 4, 2012." 2012 U.S. Dist. LEXIS 178478, at *6. Much like the operative Complaint here, moreover, the complaint in *Grodko* also alleged two partial corrective disclosures in addition to the final corrective disclosure. "The first disclosure was on February 29, 2012….The second disclosure was on May 10, 2012….The final disclosure was on June 4, 2021…." *Id.* at *15. In assessing the application of one movant, "the Subsidiaries," the court held that because the Subsidiaries sold all their shares by May 26, 2011, prior to the alleged partial disclosure on February 29, 2012, they were "subject to a unique defense regarding whether they can show loss causation relating to the losses that CEDC shareholders incurred in 2012." *Id.* at *25.[4]

---

[4] The facts supporting the holding in *Grodko* are notably different from those the court considered in *Christian v. BT Grp. PLC*, No. 17-cv-00497, 2017 U.S. Dist. LEXIS 138063 (D.N.J. Aug. 28, 2017), which also involved competing motions for appointment. There, one movant argued another could not establish loss causation under *Dura* because it "sold all of its BT Group shares before the second of the two corrective disclosures alleged in the complaint (i.e., after October 27, 2016, but before January 24, 2017), making it uniquely susceptible to a loss causation

14

Nevertheless, Greenstone anticipates the Cheng/Howard Group might argue that "some courts have been reluctant to apply *Dura* at the appointment-of-lead-plaintiff stage if a case involves multiple disclosures and the analysis of recoverable losses is murky and lacks sufficient evidence." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-9132, 2021 U.S. Dist. LEXIS 21607, at *10 (S.D.N.Y. Feb. 4, 2021). Greenstone would implore the Court to reject these holdings, however, just as the court did in *Africa v. Jianpu Tech., Inc.*, No. 21-cv-1419, 2021 U.S. Dist. LEXIS 95246, at *5 (S.D.N.Y. May 19, 2021). In considering competing applications for appointment as lead plaintiff, the court in *Africa* was presented with a nearly identical factual situation as the Court is here. There, one movant, Africa, argued another movant, Zhou, could not assert losses on shares purchased after alleged partial corrective disclosures but sold before the final corrective disclosure. *See Africa*, 2021 U.S. Dist. LEXIS 95246, *3. In response, Zhou invoked a line of cases, including *Sunrise*, wherein courts confessed

---

defense." *Id.* at *11. In advancing that argument, however, the movant argued that the pleaded "October 2016 disclosure was not a loss causation event." *Id.* at *14. The *Christian* court rejected both arguments, holding that "[i]n determining what is a partial disclosure for loss causation purposes, the case law instructs courts to hew closely to the allegations of the complaint." *Id.* at *20 (citing *Grodko*, 2012 U.S. Dist. LEXIS 178478, at *12). Because the competing movant purchased shares *before* the alleged partial disclosure and then sold those shares *after* the alleged partial disclosure, the losses were recoverable under *Dura*. Here, conversely, the transactions at issue involve options Cheng purchased *after* two alleged partial disclosures and which he either sold or which expired *before* the alleged final corrective disclosure.

"reluctan[ce] to apply a *Dura*-based approach to calculating losses" when "the complaint alleges multiple corrective disclosures." *Id.* at \*4-5 (quoting *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-cv-12084, 2019 U.S. Dist. LEXIS 160255, at \*12 (S.D.N.Y. Sep. 19, 2019)). The *Africa* court expressly rejected this argument and line of cases, holding it "would be abdicating its responsibility under the PSLRA if it were to ignore the issue of loss causation at the lead plaintiff appointment stage." *Id.* at \*4 (quoting *Sallustro*, 93 F. Supp. 3d at 27). Because "the only partial corrective disclosures contained in the Complaint occurred well before Zhou first purchased Jianpu securities," and because Zhou sold those securities *prior* to the final corrective disclosure, the *Africa* court held those losses were not recoverable and, as such, Zhou did not possess the greatest financial interest in the litigation. *Id.* at \*5. Much like in *Africa*, there is nothing "murky" about the allegations in the Complaint here. Greenstone respectfully suggests the outcome should be the same.

Finally, the application of *Dura* extends not only to Cheng's claimed losses on options *sales* preceding the final corrective disclosure, but also to those losses involving options *expirations* preceding the final corrective disclosure. In *Jiang v. Chirico*, No. 23-cv-1258, 2024 U.S. Dist. LEXIS 38112 (S.D.N.Y. Mar. 5, 2024), the court considered applications for appointment as lead plaintiff from two competing movants. Relevantly, the prevailing movant voluntarily excluded from his financial interest calculation those losses "suffered on transactions in Avaya

16

option contracts that expired as worthless prior to an alleged corrective disclosure, and therefore not recoverable under <u>Dura</u>." *Id.* at *25 n.8 (internal quotations omitted); *see also id.* at *25 n.10 ("As noted above, on September 8, 2022 and October 31, 2022, Sweatt purchased option contracts for an additional 2,250 shares of Avaya stock. Sweatt reports that these option contracts "expired as worthless" within the Class Period "prior to an alleged corrective disclosure.""") (internal citations omitted).

For all the foregoing reasons, the Cheng/Howard Group did not suffer net recoverable losses relating to its Class Period transactions in Red Cat securities but instead enjoyed a profit of some ***$114,756.89***. It therefore does not possess the greatest financial interest in the litigation under the PSLRA and prevailing precedent.

### C. The Cheng/Howard Group Does Not "Otherwise Satisfy" the Requirements of Rule 23 and Is Subject to Unique Defenses

Even if the Cheng/Howard Group arguably sustained net losses with respect to its Class Period transactions in Red Cat securities – which it did not – the Cheng/Howard Group would nevertheless not be the presumptive lead plaintiff because it does not otherwise satisfy the requirements of Rule 23 and is subject to disqualifying unique defenses.[5]

---

[5] While the Cheng/Howard Group's overstatement of its losses (detailed in § II.B. *supra*) is not set forth herein as a reason why it cannot adequately represent the Class

    *1.*  <u>*Cheng Day Traded in Red Cat Common Stock During the*</u>
       <u>*Class Period*</u>

As detailed in the Cheng/Howard Conformed Loss Chart, Cheng enjoyed a *gain* of approximately $8,375 on his Class Period transactions in Red Cat common stock. *See* Suppl. Giblin Dec. at Ex. A. In addition, Cheng's trading in Red Cat common stock constitutes in-and-out "day trading." Cheng purchased 5,200 shares of Red Cat stock on November 15, 2024, and sold those 5,200 shares the same day. Cheng then purchased 3,755 shares on December 20, 2024, and sold those 3,755 shares the same day. Cheng then purchased 2,440 shares on December 24, 2024, and sold those shares the following trading day, on December 26, 2024. *See id.*

Courts within and outside this District have held such in-and-out day trading constitutes a unique defense rending plaintiffs incapable of adequately representing the class. *See, e.g.*, *In re Opnext, Inc. Sec. Litig.*, No. 08-cv-0920, 2008 U.S. Dist. LEXIS 60678, at *10 (D.N.J. Aug. 6, 2008) ("Day trading is not commensurate with the manner in which the typical class member sustained alleged losses. Such in-and-out trading is susceptible to unique defenses that are not equally applicable to other class members."); *Galmi v. Teva Pharms. Indus.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential "day trader," he may be subject to unique defenses that make him an inappropriate lead plaintiff.").

---

pursuant to Rule 23, § II.D.1. *infra* and the authority cited therein explains why said overstatement is disqualifying in and of itself.

2.    *Cheng Predominantly Traded in Red Cat Options,*
*Subjecting Him to Unique Reliance Defenses*

As evidenced by the fact that Cheng himself asserts no losses on his Class Period transactions in Red Cat common stock, but instead attributes all his (illusory) Class Period losses to transactions Red Cat options, he is subject to a unique defense as to typicality. Courts have held plaintiffs who predominantly transacted in options are "potentially subject to unique defenses irrelevant to regular stock purchases in the class," such as issues relating to "the precise value of the options" and "the competitive structure of the market in which the options are traded…." *Andrada v. Atherogenics, Inc.*, No. 05-cv-0061, 2005 U.S. Dist. LEXIS 6777, at *14, *15 (S.D.N.Y. Apr. 18, 2005); *see also Cook v. Allergan PLC*, No. 18-cv-12089, 2019 U.S. Dist. LEXIS 51962, at *7 (S.D.N.Y. Mar. 21, 2019) (finding lead plaintiff movant with 60% of losses arising from options "would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict") (internal quotations omitted); *City of Hollywood Firefighters' Pension Fund v. ASML Holding N.V.*, No. 24-CV-9908, 2025 U.S. Dist. LEXIS 41430, at *6-7 (S.D.N.Y. Mar. 6, 2025) ("If the Court were to appoint the Afshanis as lead plaintiff, it is likely that their options trading and short selling would become a focal point at class certification, with unique questions raised about their resulting losses.").

19

3.    *Cheng and Howard Had No Pre-Litigation Relationship and Appear to Have Been Brought Together by Counsel for the Sole Purpose of Aggregating Losses*

The Joint Declaration the Cheng/Howard Group submitted in support of Cheng and Howard's motion for appointment as "Co-Lead Plaintiffs" reveals that they have no pre-litigation relationship and appear to have been brought together by their counsel for the sole purpose of aggregating losses. Cheng is a 35-year-old data analytics engineer who lives in Maywood, New Jersey, while Howard is a 62-year-old retiree who lives in Tallahassee, Florida. *See* ECF No. 6-3 at ¶¶ 2-3. Based on the particulars of the Joint Declaration, moreover, it would appear Cheng and Howard have never even met or spoken to one another. *Id.* at ¶ 4 ("We are aware of each other, have one another's contact information, and approved the filing of a motion on our behalves seeking appointment jointly as Co-Lead Plaintiffs.").

Courts within this and other Circuits have routinely rejected such lawyer-driven "groups." *See, e.g.*, *Dang v. Amarin Corp. PLC*, No. 21-cv-19212, 2022 U.S. Dist. LEXIS 196034, at *24-25 (D.N.J. Oct. 27, 2022) ("This Court joins the courts in Takata and Stires in determining that the Joint Declaration's language regarding the Amarin Group's single communication and plans to oversee the litigation does not allay the Court's concerns about the ability of this group to effectively monitor and manage the litigation, particularly if a dispute were to arise, where the members do not have a pre existing relationship and acknowledge that they met through

20

counsel for purposes of this litigation."); *Goldberger v. PXRE Grp., Ltd.*, No. 06-CV-3410, 2007 U.S. Dist. LEXIS 23925, at *14-15 (S.D.N.Y. Mar. 30, 2007) (rejecting proposed group that "shares only this lawsuit in common" and suspecting the group was the result of the "type of lawyer-driven action that the PSLRA eschews"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2006) (rejecting groups of unrelated investors, stating that "by allowing attorneys to designate otherwise unrelated plaintiffs as a purported 'group,' and by allowing unrelated groups to aggregate investments in an effort to generate the 'largest financial interest,' a strong possibility emerges that lawyers will form such groups to manipulate the selection process, and thereby gain control of the litigation") (citations omitted).

### D.    The Mayers Do Not "Otherwise Satisfy" the Requirements of Rule 23 and Are Subject to Unique Defenses

As noted above, while the Mayers' approximate losses of $(225,927.12) are greater than Greenstone's loss of $(97,421), Greenstone carries each of the three remaining *Lax* factors by a significant margin, having purchased 160,850 shares of Red Cat common stock during the Class Period (compared to the Mayers' 37,878), expended $1,861,714 on these purchases (compared to the Mayers' $499,535.07), and retained 60,000 shares of Red Cat common stock through the end of the Class Period (compared to the Mayers' 37,878). *See* ECF No. 5-2 at 10.

Thus, while courts within this Circuit and others emphasize approximate loss

21

in assessing financial interest, the other three *Lax* factors should also be considered and can be decisive where, as here, they overwhelmingly favor a movant without the greatest approximate loss. *See, e.g.*, *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-0240, 2016 U.S. Dist. LEXIS 164682, at *5 (S.D.N.Y. Nov. 29, 2016) (appointing movant with lesser loss where the other Lax factors "overwhelmingly favor[ed]" that movant); *Pio v. GM Co.*, No. 14-cv-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation.") (collecting citations).

Nevertheless, while Greenstone maintains it possesses the greatest financial interest in the litigation when all four *Lax* factors are considered holistically, even if the Mayers' greater loss could be said to trump the remaining three *Lax* factors, Greenstone has rebutted any presumption in the Mayers' favor by demonstrating that they do not otherwise satisfy the requirements of Rule 23 and are subject to unique defenses.

1.   *The Mayers' Overstated Losses Go to the Heart of their Adequacy*

The Loss Chart submitted with the Mayers' Motion (ECF No. 3-6) demonstrates that the Mayers miscalculated the 90-day "lookback price" as $7.1445/share, as opposed to $7.22/share, because they concluded that said price "is

22

the average closing price between January 17, 2025 and April 16, 2025." *Id.* This is incorrect. The PSLRA's damages limitation, codified at 15 U.S.C. § 78u-4(e)(1), provides that:

> [T]he award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

*Id.* Here, the final "date on which the information correcting the misstatement or omission that is the basis for the action" was clearly alleged to have been "disseminated to the market on January 16, 2025, *not* January 17, 2025. *See* Complaint at ¶ 67 ("On January 16, 2025, during intraday trading hours, Kerrisdale published a report alleging, inter alia, that Red Cat had overstated the value of the SRR Contract and lacks the production capacity to deliver on its promises."). When appropriately calculated with a January 16, 2025, start date, therefore, the 90-day lookback price is $7.22/share, *not* $7.1445/share. Utilizing the correct price reduces the Mayers' losses by some $2,987.97, from $(228,915.09), to $(225,927.12). The nature of this overstatement undermines the Mayers' adequacy to serve as Lead Plaintiff in this Action under Rule 23.

While minor errors will certainly not always mar a movant's adequacy, numerous courts have held that fundamental errors such as this (especially where the errors result in the overstatement of losses) demonstrate a lack of sophistication and

23

attention to detail that undermines a showing of adequacy. *See, e.g.*, *Bousso v. Spire Glob., Inc.*, No. 24-cv-01458, 2024 U.S. Dist. LEXIS 213229, at \*13 (E.D. Va. Nov. 21, 2024) (while accepting movant's "incorrect loss calculation was an innocent error," court held the error nevertheless "raises serious concerns about Tagawa and his counsel's ability to adequately litigate this case"); *Karp v. Diebold Nixdorf, Inc.*, 2019 U.S. Dist. LEXIS 188670, at \*17 (S.D.N.Y. Oct. 30, 2019) (error resulting in overstated losses "struck at the core of the PSLRA's lead plaintiff inquiry: determining which movant holds the largest financial stake in the litigation"); *cf. Reitan v. China Mobile Games & Entm't Grp., Ltd*, 68 F. Supp. 3d 390, 399 (S.D.N.Y. 2014) ("The goal of the PSLRA was not to select individuals for lead plaintiff who make no mistakes…."); *Siegel v. The Bos. Beer Co.*, No. 21-CV-7693, 2021 U.S. Dist. LEXIS 239143, at \*23 (S.D.N.Y. Dec. 14, 2021) (disregarding typographical errors that did not affect movant's loss calculation).

Because the PSLRA's damages limitation is such a fundamental provision affecting the lead plaintiff inquiry, and the Mayers' error in applying that provision resulted in an overstatement of their losses, Greenstone respectfully suggests the error undermines a finding that they are otherwise qualified to represent the putative Class under Rule 23.

2. <u>The Mayers Would Saddle the Putative Class with Unnecessarily Duplicative Counsel</u>

Finally, the Mayers would saddle the putative Class with *three law firms*. In

24

addition to seeking approval for their selection of Glancy Prongay & Murray LLP ("Glancy") as proposed Lead Counsel, the Mayers also seek approval of Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella") as "Liaison Counsel for the Class" and identify The Law Offices of Frank R. Cruz ("Cruz") as "Additional Counsel." ECF No. 3-2 at 10, 11. The Mayers do not explain why it is necessary for the Court to appoint "Liaison Counsel," what role Carella would play as proposed Liaison Counsel (or how that role and associated duties would differ from those traditionally assumed by properly associated local counsel), or what non-duplicative benefit Cruz would confer as "Additional Counsel."

"The potential for duplicative services and the concomitant increase in attorneys' fees work against the approval of more than one law firm, especially in cases in which one law firm has the proven ability to adequately manage and litigate securities class actions." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 115 (D.N.J. 1999). Thus, while courts must give appropriate "weight to plaintiffs' self-selection of class counsel," where plaintiffs selected three law firms, the court in *Haynie v. Cornell Univ.* found "the proposed counsel structure [was] unnecessarily duplicative" and would "not encourage judicial economy and efficiency." No. 20-CV-467, 2020 U.S. Dist. LEXIS 188766, at *6 (N.D.N.Y. Oct. 13, 2020); *see also In re Polarityte, Inc. Sec. Litig.*, No. 18-cv-0510, 2019 U.S. Dist. LEXIS 8620, at *12 (D. Utah Jan. 16, 2019) ("Although all proposed counsel appear qualified, Lawi

25

has entirely failed to justify the appointment of three separate law firms as counsel in this matter. This court is concerned that the appointment of three law firms will only lead to exorbitant legal fees and duplicative filings.").

Courts within this District have similarly denied requests for appointment of "Liaison Counsel" when, as here, "[n]othing has been briefed regarding a specific need for liaison counsel," "[n]or has a description of proposed duties and responsibilities for liaison counsel been provided." *Durigon v. Toronto-Dominion Bank*, No. 17-cv-1665, 2017 U.S. Dist. LEXIS 205404, at *19 (D.N.J. Dec. 13, 2017); *see also In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 224 (D.N.J. 1999) ("There has been no compelling reason presented in the instant case for the appointment of liaison counsel.").

### E.    Greenstone Is the "Most Adequate Plaintiff" That "Otherwise Satisfies" the Requirements of Rule 23

Having rebutted any arguable presumption in favor of the Cheng/Howard Group or the Mayers, Greenstone asserts a greater loss than any of the competing movants who otherwise satisfies the adequacy and typicality requirements of Rule 23. Greenstone went above and beyond the minimal requirements of the PSLRA by providing a declaration of its President and Managing Member, Dr. Samuel Carli, MD, in addition to its Certification, with further information about its qualifications to serve as Lead Plaintiff. *See* ECF No. 5-7. Dr. Carli has over 20 years of investing experience and is a medical doctor with a practice focusing on post-acute care. *Id.* at

26

¶ 2. Greenstone is willing to serve in the role of Lead Plaintiff and has selected competent counsel to represent itself and the Class. *See Garcia v. Intelligroup, Inc.*, No. 04-CV-4980, 2005 U.S. Dist. LEXIS 50230, at \*11 (D.N.J. May 19, 2005) ("Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do [sic] not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the outcome of the case to ensure vigorous adequacy.") (quoting *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001)).

Greenstone's claims are also typical of the claims of the Class. Like all other Class members, Greenstone: (1) purchased Red Cat securities during the Class Period: (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) ("The typicality requirement of Rule 23 is satisfied where the representative's claims arise from the same event, practice, or course of conduct that gives rise to the claims of the class members, and are based on the same legal theory.")

### F.    The Court Should Approve Greenstone's Choice of Lead Counsel

As stated in its opening Motion and supportive memorandum, Greenstone has selected KSF to be Lead Counsel for the putative Class. KSF is competent and experienced and has represented stockholders as lead or co-lead counsel in numerous

securities fraud class actions, many of which have resulted in substantial recoveries on behalf of shareholders. *See* ECF No. 5-8 (KSF Resumé). Because courts should not interfere with a plaintiff's selection of counsel unless it is necessary to do so to "protect the interests of the class," 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II)(aa), and there has been no showing that KSF cannot or would not adequately represent the Class, Greenstone's selection of KSF as Lead Counsel should be approved.

## III.    CONCLUSION

For all of the foregoing reasons, Greenstone Nevada, LLC respectfully requests that this Court deny the competing motions for appointment as Lead Plaintiff and approval of selection of Lead Counsel and: (1) appoint Movant to serve as Lead Plaintiff; (2) approve Movant's selection of KSF as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: August 4, 2025            Respectfully submitted,

**DECOTIIS, FITZPATRICK,
COLE & GIBLIN, LLP**

*/s/ Vincent M. Giblin*
Vincent M. Giblin
61 South Paramus Road, Suite 250
Paramus, NJ 07652
Telephone: (201) 347-2136
Fax: (201) 928-0588
Email: vgiblin@decotiislaw.com

*Local Counsel for Lead Plaintiff Movant
Greenstone Nevada, LLC*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (*PHV to be submitted*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498
Email: kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant
Greenstone Nevada, LLC and Proposed
Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

On August 4, 2025, the foregoing document was filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED: August 4, 2025           */s/ Vincent M. Giblin*
                                      Vincent M. Giblin

29