James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

*Liaison Counsel for Lead Plaintiff
Movants William Mayers and Tamara
Mayers*

Robert V. Prongay
Charles H. Linehan
**GLANCY PRONGAY &
MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Fax: (310) 201-9160

*Counsel for Lead Plaintiff Movants
William Mayers and Tamara Mayers*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DYLAN OLSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RED CAT HOLDINGS, INC., JEFFREY THOMPSON, LEAH LUNGER, JOSEPH HERNON, GEORGE MATUS, GEOFFREY HITCHCOCK, and BRENDAN STEWART,<br><br>Defendants. | Case No. 2:25-cv-05427-MEF-JSA<br><br>**THE MAYERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |

## TABLE OF CONTENTS

I.    THE CHENG/HOWARD GROUP SHOULD BE DISQUALIFIED AS INADEQUATE, ATYPICAL, AND SUBJECT TO UNIQUE DEFENSES.................................................................................................1

    A.    The Cheng/Howard Group Is Cobbled Together By Its Counsel .........1

    B.    Cheng Is Atypical Because His Loss Is Attributable To Options And He Has          A Stock Gain ...............................................................3

II.   THE MAYERS ARE THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE THEY HAVE THE NEXT-LARGEST FINANCIAL INTEREST................................................................................4

III.  NO MOVANT HAS REBUTTED THE PRESUMPTION THAT THE MAYERS ARE THE MOST ADEQUATE PLAINTIFF..............................6

    A.    The Mayers Accurately Calculated the 90-Day Average Price ............7

    B.    The Mayers' Selection of Counsel Is Not Disqualifying......................9

IV.  CONCLUSION ...........................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*Chauhan v. Intercept Pharms.*,
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021)...........................................................3

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020)........................................................1

*D'Agostino v. Innodata, Inc.*,
2024 WL 4615728 (D.N.J. Oct. 30, 2024).............................................................5

*Dang v. Amarin Corp. PLC*,
2022 WL 15524944 (D.N.J. Oct. 27, 2022)...........................................................5

*Friedman v. Quest Energy Partners LP*,
261 F.R.D. 607 (W.D. Okla. 2009) ........................................................................9

*In re Cendant Corp. Litig.*,
182 F.R.D. 144 (D.N.J. 1998) ................................................................................6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .............................................................................1, 4

*In re SLM Corp. Sec. Litig.*,
2012 WL 209095 (S.D.N.Y. Jan. 24, 2012)..........................................................8

*In re Williams Sec. Litig.*,
2002 WL 32153476 (N.D. Okla. July 8, 2002)......................................................9

*Maeshiro v. Yatsen Holding Ltd.*,
2023 WL 4684106 (S.D.N.Y. July 21, 2023).........................................................9

*Malriat v. QuantumScape Corp.*,
No. 3:21-cv-00058, 2021 WL 1550454 (N.D. Cal. Apr. 20, 2021)......................9

*May v. Barclays PLC*,
2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) .......................................................9

*Miller v. Eagle Pharms., Inc.*,
   2024 WL 3858124 (D.N.J. Aug. 19, 2024) ...................................................... 5, 10

*Montesano v. Eros Int'l PLC*,
   2020 WL 1873015 (D.N.J. Apr. 14, 2020).................................................... 5, 10

*Niederklein v. PCS EdventuresA.com, Inc.*,
   2011 WL 759553 (D. Idaho Feb. 24, 2011) ............................................................8

*Roby v. Ocean Power Techs., Inc.*,
   2015 WL 1334320 (D.N.J. Mar. 17, 2015) .......................................................4, 5

*Roofers' Pension Fund v. Papa*,
   2017 WL 1536222 (D.N.J. Apr. 27, 2017)...............................................................6

*Sanfillipo v. Edge Therapeutics, Inc.*,
   2018 WL 10374645 (D.N.J. Dec. 7, 2018) ...........................................................10

*Silverberg v. DryShips Inc.*,
   2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) .......................................................9

*Vesta Ins. Grp., Inc. Sec. Litig.*,
   2008 WL 11627223 (N.D. Ala. Aug. 20, 2008)......................................................8

*Ylitalo v. Automatic Data Processing, Inc.*,
   2025 WL 1779205 (D.N.J. June 27, 2025) ..............................................................4

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................10

15 U.S.C. § 78u-4(e) ....................................................................................................7

The Mayers'[1] submit this memorandum of law in further support of their motion for appointment as lead plaintiff and approval of counsel (Dkt. No. 3), and in reply to the oppositions to their motion filed by the Cheng/Howard Group (Dkt. No. 9, "C/H Group Opp.") and Greenstone (Dkt. No.11, "Greenstone Opp.").

## I. THE CHENG/HOWARD GROUP SHOULD BE DISQUALIFIED AS INADEQUATE, ATYPICAL, AND SUBJECT TO UNIQUE DEFENSES

### A. The Cheng/Howard Group Is Cobbled Together By Its Counsel

While the Cheng/Howard Group claims to have a larger loss than the Mayers, they should be disqualified from consideration because their group consists of two unrelated investors, cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001); *see also* Mayers Opp. at 6-8. Because they are grouped by counsel "the members of [the] 'group' c[an] not be counted on to monitor counsel in a sufficient manner" and the group is inadequate to represent the class. *Cendant*, 264 F.3d at 267; *see also Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (declining to appoint a "random assemblage of unlike individuals" that "had no pre-existing relationship" and "did not even know of one another before counsel introduced them"). Greenstone concurs. *See* Greenstone Opp.

---

[1] All capitalized terms herein have the same definition as in the Mayers' opposition memorandum (Dkt. No. 10, "Mayers Opp.").

at 20 ("it would appear Cheng and Howard have never even met or spoken to one another").

Despite now having had a second opportunity in their opposition memorandum to present evidence that their group is not lawyer-constructed, Cheng and Howard instead confirm it. *See* C/H Opp. at 8-14. Cheng and Howard admit that the only connection between them is their counsel—they did not know each other before this litigation. *See* C/H Opp. at 10-11. Moreover, their opposition ***still*** does not affirm that Cheng and Howard have ever directly spoken to each other, only vaguely claiming that Cheng and Howard are "a cohesive pair of likeminded investors." C/H Opp. at 10.

Moreover, Cheng and Howard effectively concede that their counsel formed their group in an attempt to blunt Cheng's typicality and adequacy issues stemming from him only having options losses. Indeed, Cheng's counsel confirmed that they are aware of the ample caselaw disqualifying movants whose loss is primarily attributable to options and that Howard was added to the group specifically to represent stockholders' interests. *See* C/H Opp. at 9, 14 (recognizing "a potential argument" that Cheng is inadequate due to "the fact that Cheng's losses stem from . . . option contracts" and later stating that appointing Howard as co-lead plaintiff "will ensure that the interests of . . . common stock . . . investors are represented").

2

The Cheng/Howard Group attempts to sidestep concerns regarding the formation of their group by pointing out that Cheng individually has a larger financial interests than the Mayers. *See* C/H Opp. at 13. However, this does not render their group adequate or negate the fact that it is lawyer-constructed because "at the time they decided to form the group and submit their application . . . they had no idea who the other movants would be or the size of their losses." *Chauhan v. Intercept Pharms.*, 2021 WL 235890, at \*5 (S.D.N.Y. Jan. 25, 2021).

Since the Cheng/Howard Group is cobbled together by its counsel, the group should be disqualified as inadequate.

### B.   Cheng Is Atypical Because His Loss Is Attributable To Options And He Has A Stock Gain

As explained in the Mayers' opposition memorandum, courts routinely disqualify movants whose losses are largely attributable to options transactions because they are atypical of the largely-stockholder class, and options present a myriad of issues that are not common to the mostly-stockholder class on issues like loss causation and damages. *See* Mayers Opp. at 4-6. Greenstone identified the same issue. *See* Greenstone Opp. at 19 ("Cheng himself asserts no losses on his Class Period transactions in Red Cat common stock . . . .").[2]

---

[2] Greenstone also points out in its opposition memorandum that if Cheng's unrecoverable options losses (losses on options Cheng did not hold through a corrective disclosure) are removed from Cheng's loss calculation, Cheng actually

3

Cheng effectively concedes that he is atypical of the stockholder class and subject to unique defenses by arguing that Howard's joint appointment will "ensure that the interests of . . . common stock . . . investors are represented." *See* C/H Opp. at 14. Accordingly, Cheng is atypical, inadequate, and subject to unique defenses, and he and his group should be disqualified.

## II. THE MAYERS ARE THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF BECAUSE THEY HAVE THE NEXT-LARGEST FINANCIAL INTEREST

All movants, including Greenstone, concede that the Mayers have the largest loss after the Cheng/Howard Group. *See* Greenstone Opp. at 6.

| Movant | Loss |
|---|---|
| ~~James Cheng~~ | ~~$262,176~~ |
| ~~Levelt Howard~~ | ~~$32,249~~ |
| ~~Cheng/Howard Total~~ | ~~$294,425~~ |
| *William Mayers* | *$137,623* |
| *Tamara Mayers* | *$91,292* |
| **Mayers Total** | **$228,915** |
| **Greenstone Nevada, LLC** | **$115,904** |
| **Catherine A. Green** | **$31,742** |

The Mayers' loss is nearly double that of Greenstone.

Moreover, "[t]he Third Circuit has concluded that 'largest financial interest' means the largest loss." *Roby v. Ocean Power Techs., Inc.*, 2015 WL 1334320, at *5 (D.N.J. Mar. 17, 2015) (citing *Cendant*, 264 F.3d at 223); *Ylitalo v. Automatic Data*

---

has a net gain on his transactions. *See* Greenstone Opp. at 10-16. This issue further demonstrates Cheng's atypicality and vulnerability to unique defenses.

4

*Processing, Inc.*, 2025 WL 1779205, at *2 (D.N.J. June 27, 2025) (same); *D'Agostino v. Innodata, Inc.*, 2024 WL 4615728, at *2 (D.N.J. Oct. 30, 2024) (same); *Miller v. Eagle Pharms., Inc.*, 2024 WL 3858124, at *2 (D.N.J. Aug. 19, 2024) (same); *Montesano v. Eros Int'l PLC*, 2020 WL 1873015, at *3 (D.N.J. Apr. 14, 2020) (same); *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at *3 (D.N.J. Oct. 27, 2022) (same). Since the Mayers have the largest loss, they have the largest financial interest of the remaining movants.

Greenstone urges the court to look to factors other than loss to inform the financial interest determination. *See* Greenstone Opp. at 21-22. However, these other factors are relevant only if it is unclear who has the largest loss, which is not the case here. *See Ocean Power*, 2015 WL 1334320, at *5 ("[T]he Third Circuit recommends that, in cases that do not present a clear choice as to the largest financial interest, courts should also consider, *inter alia*, (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs."). Indeed, even when other factors are considered, "courts in this circuit have accorded the third element, the largest financial loss, the greatest weight." *Id.* (collecting cases). And when the factors conflict, loss is determinative. *See Innodata*, 2024 WL 4615728, at *2 (D.N.J. Oct. 30, 2024) ("Gardner argues that he should be appointed lead plaintiff because he purchased and retained more shares than Grondin

5

and expended greater funds. . . . However, courts within the Third Circuit consider the approximate loss suffered to be the most important factor when assessing the largest financial interest.").

Since the Mayers have a much larger loss than Greenstone, they have a larger financial interest, making them the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### III.    NO MOVANT HAS REBUTTED THE PRESUMPTION THAT THE MAYERS ARE THE MOST ADEQUATE PLAINTIFF

To rebut the most adequate plaintiff presumption, the competing movants must present "proof" that the Mayers are inadequate or subject to unique defenses. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "Speculative assertions" are not proof. *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149 (D.N.J. 1998). Proof requires "evidence to show that [the defense] is not speculative or meritless." *Roofers' Pension Fund v. Papa*, 2017 WL 1536222, at *4 (D.N.J. Apr. 27, 2017).

Only Greenstone attempts to rebut the presumption that the Mayers are the most adequate plaintiff. *See* Greenstone Opp. at 22-26. Greenstone argues that the Mayers are inadequate because they miscalculated the 90-day average price to value their losses on retained shares. *Id* at 22-24. Greenstone also argues that the Mayers are inadequate because there are three firms listed on their moving papers and their local counsel is identified as "liaison counsel." *See id.* at 24-26. These attacks are baseless on both the facts and law.

6

### A.      The Mayers Accurately Calculated the 90-Day Average Price

Greenstone argues that the Mayers improperly calculated their losses by using a 90-day average price starting on January 17, 2025 rather than January 16, 2025. *See id.* at 22-24.

However, Greenstone is wrong because January 17, not January 16, is the correct start date. For shares purchased during the class period and held after the corrective disclosure, the PSLRA states that "the award of damages to the plaintiff shall not exceed the difference between the purchase . . . price paid . . . and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement . . . is ***disseminated*** to the market." 15 U.S.C. § 78u-4(e) (emphasis added). Greenstone incorrectly claims that because Kerrisdale published their report regarding Red Cat on January 16, 2025, that is when "information correcting the misstatement or omission that is the basis for the action was alleged to have been disseminated to the market." Greenstone Opp. at 23 (cleaned up). However, "dissemination" of information can happen gradually and not be complete the instant the information is first published. Here, the complaint in this action alleges that the information was disseminated over January 16 ***and*** January 17. *See* Dkt. No. 1 ¶ 14 ("On this news, Red Cat's stock price fell $2.35 per share, or 21.54%, ***over the following two trading sessions***, to close at $8.56 per share ***on January 17, 2025***.") (emphasis added). As such, the

7

complaint alleges the information was not fully disseminated until January 17, 2025, which is therefore the correct date to start the 90-day average price.

To the extent Greenstone stands by its argument that getting the dissemination date wrong is disqualifying, Greenstone and its counsel should be disqualified. Moreover, Greenstone's error (unlike the Mayers' alleged error) is potentially damaging to the claims of the class because Defendants can use Greenstone's representation that the information was "disseminated to the market on January 16, 2025, *not* January 17, 2025" (Greenstone Opp. at 23) to argue that the class is not entitled to damages in connection with the stock price decline on January 17.

Regardless, the appropriate start date is a factual determination that need not be resolved at this early stage since "some authority suggests that the starting date of the 90-day period is a question for the jury and one on which expert testimony would be needed." *See In re Vesta Ins. Grp., Inc. Sec. Litig.*, 2008 WL 11627223, at *1 (N.D. Ala. Aug. 20, 2008).

Even if the Mayers started the 90-day average price one day late (they did not) this is not the type of "error" that renders the Mayers or their counsel inadequate. Even when mistakes are made in a sworn certification (which there is no allegation of here), "minor or inadvertent mistakes . . . do not strike at the heart of Rule 23's adequacy requirement." *See Niederklein v. PCS EdventuresA.com, Inc.*, 2011 WL 759553, at *11 (D. Idaho Feb. 24, 2011); *see also In re SLM Corp. Sec. Litig.*, 2012

8

WL 209095, at *8 (S.D.N.Y. Jan. 24, 2012) ("Courts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties."); *Silverberg v. DryShips Inc.*, 2018 WL 10669653, at *3 (E.D.N.Y. Aug. 21, 2018) (same); *May v. Barclays PLC*, 2023 WL 5950689, at *16 (S.D.N.Y. Sept. 13, 2023) (same); *Maeshiro v. Yatsen Holding Ltd.*, 2023 WL 4684106, at *9 (S.D.N.Y. July 21, 2023) (same); *In re Williams Sec. Litig.*, 2002 WL 32153476, at *3 (N.D. Okla. July 8, 2002) ("[T]he corrected errors in Mr. Meruelo's certification and loss calculation do not provide a sufficient basis for denying his motion to be appointed lead plaintiff."); *Friedman v. Quest Energy Partners LP*, 261 F.R.D. 607, 615 (W.D. Okla. 2009) ("[T]he alleged errors are not significant enough proof that the Barretti Group will not fairly and adequately protect the interests of the QELP Class to rebut the presumption that the Barretti Group is the 'most adequate plaintiff.'"); *Malriat v. QuantumScape Corp.*, No. 3:21-cv-00058, 2021 WL 1550454, at *5 (N.D. Cal. Apr. 20, 2021) (appointing movant were "[t]here is no indication" that errors were "done in bad faith" or "intentionally misleading").  As such, an error in a loss chart (which is not required to be filed by the PSLRA, unlike a certification) is not disqualifying.

**B.     The Mayers' Selection of Counsel Is Not Disqualifying**

Greenstone objects to the Mayers' proposing Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella") as liaison counsel on the basis that "the Mayers do not

explain why it is necessary for the Court to appoint 'Liaison Counsel,'" or "how that role and associated duties would differ from those traditionally assumed by properly associated local counsel." Greenstone Opp. at 25. This argument is purely one of semantics. "Liaison counsel" is functionally identical to what Greenstone labels "local counsel." The Mayers' proposed lead counsel does not maintain offices in New Jersey, and is therefore coordinating with Carella, who does maintain offices in New Jersey. Greenstone's proposed lead counsel is doing the same. *See* Greenstone Opp. at 11 (identifying Decotiis, Fitzpatrick, Cole & Giblin, LLP as local counsel for Greenstone).[3] Moreover, courts in this District have repeatedly approved Glancy Prongay & Murray LLP ("GPM") and Carella as lead and liaison counsel, finding them more than merely adequate to represent the class. *See, e.g.*, *Eagle Pharmaceuticals*, 2024 WL 3858124, at *5 ("both firms have substantial experience litigating securities fraud class actions"); *Eros Int'l*, 2020 WL 1873015, at *12 (same); *Sanfillipo v. Edge Therapeutics, Inc.*, 2018 WL 10374645, at *3 (D.N.J. Dec. 7, 2018) ("these firms recently clarified their proposed lead counsel / liaison counsel relationship in a securities litigation pending before another Court in this

---

[3] Notably, counsel for Greenstone is not seeking Court approval of its selection of local counsel in violation of the PSLRA. *Compare* Dkt. No. 5 (requesting approval of lead counsel only), *with* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, ***subject to the approval of the court***, select and retain counsel to represent the class.") (emphasis added).

District" and "this Court finds that the firms' proposed division of labor is appropriate").

Greenstone also argues that "[t]he Mayers do not explain . . . what non-duplicative benefit [The Law Offices of Frank R. Cruz ("Cruz")] would confer as 'Additional Counsel.'" Greenstone Opp. at 25. Cruz, who formerly worked for GPM and has maintained a professional relationship with GPM since starting his own firm, is listed as "additional counsel" because GPM and Cruz jointly represent the Mayers in connection with this action. As such, Cruz will be working with GPM on this matter. Nothing about this makes the Mayers inadequate. Indeed, the Cruz firm recently assisted GPM as "Additional Counsel" in successfully obtaining a $433.5 million dollar securities settlement—the largest securities class action settlement of 2025 thus far. *See In re Alibaba Group Holding Ltd. Sec. Litig.*, No. 1:20-cv-09568-GBD-JW (S.D.N.Y.), Dkt. No. 142 at 4 (Notice of Motion and Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation, identifying Cruz as "Additional Counsel").

Greenstone's two arguments about counsel are entirely baseless and in no way rebut the presumption that the Mayers are the most adequate plaintiff.

## IV. CONCLUSION

With the exclusion of the cobbled together group, the Mayers are the presumptively most adequate plaintiff. Since the presumption has not been rebutted,

11

the Mayers request that the court enter an Order: (1) appointing the Mayers as lead plaintiff, (2) approving their selection of GPM as lead counsel and Carella as liaison counsel, and (3) denying the competing motions.

DATED: August 11, 2025          Respectfully submitted,

**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**

By:   *s/ Kevin G. Cooper*
James E. Cecchi
Donald A. Ecklund
Kevin G. Cooper
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com
         decklund@carellabyrne.com
         kcooper@carellabyrne.com

*Liaison Counsel for Lead Plaintiff Movants William Mayers and Tamara Mayers and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movants William Mayers and Tamara Mayers and Proposed Lead Counsel for the Class*

12

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

13

## CERTIFICATE OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On August 11, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the District of New Jersey, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 11, 2025, at Roseland, New Jersey.

/s/ Kevin G. Cooper
Kevin G. Cooper

14